UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAWN TREIGLE | CIVIL ACTION |
| VERSUS | NO. 22-581 |
| STATE FARM FIRE AND CASUALTY INSURANCE COMPANY | SECTION: "J"(1) |

### ORDER AND REASONS

Before the Court is a partial *Motion for Summary Judgment* **(Rec. Doc. 34)** filed by Defendant State Farm Fire and Casualty Company ("State Farm"), Plaintiff Dawn Treigle's opposition thereto (Rec. Doc. 43), and State Farm's reply (Rec. Doc. 51). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that State Farm's motion for partial summary judgment on Plaintiff's bad faith claims **(Rec. Doc. 34)** should be **GRANTED.**

### FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of Plaintiff Dawn Treigle's claim that her home sustained serious water damage as a result of Hurricane Ida on August 29 and 30, 2021.[1] Plaintiff alleges that State farm failed to timely pay the loss amount, and she claimed breach of contract and breach of duty of good faith and fair dealing.[2] At issue in the instant motion is Plaintiff's claim that State Farm's decision not to pay her claim was arbitrary and capricious, which she claims entitles her to statutory

---

[1] Ms. Treigle opted out of the en banc court's Streamlined Settlement Program as part of the Hurricane Ida Case Management Order.
[2] Plaintiff also brought a claim for a declaratory judgment, which the court dismissed on the pleadings as redundant to her substantive claims. (Rec. Doc. 44).

penalties under LA. REV. STAT. § 22:1892 and § 22:1973. Plaintiff's home insurance policy with State Farm excludes losses related to surface water and mold. (Rec. Doc. 34-1, at 7). Additionally, in January 2020, wind and a fallen tree limb damaged Plaintiff's roof and ceiling, damage that was covered by her homeowner's insurance policy with State Farm, and Plaintiff replaced the roof of the house. *Id.* at 3.

Plaintiff evacuated her home ahead of Hurricane Ida and returned on September 7, 2021. That day, Plaintiff left a voicemail for her insurer, State Farm, stating that she returned home to two inches of standing water in the house that appeared to have originated from the hallway bathroom toilet. (State Farm Case Log, Rec. Doc. 43-1). The State Farm employee advised her she may want to reach out to a water mitigation company to start helping with the water, but the company was still waiting for an inspection so coverage can be confirmed. *Id.* Ms. Teigle then contacted 7 Brothers Company to start mitigation work at the property, including tearing out and disposing of the wet building materials. (7 Brothers Invoice, Rec. Doc. 43-2). 7 Brothers started work on September 12, 2021. (Rec. Doc. 43, at 1).

Then, on September 21, 2021, State Farm representative David Long inspected Plaintiff's home alongside Plaintiff's contractor, Kyle Resmondo, who owns MK Red Construction. Long found that the parts of the interior that had been allegedly damaged, including floors, drywall, and ceilings, had been completely gutted. (State Farm Case Log, Rec. Doc. 34-4, at 9). He also made the following notes on his inspection observations:

- ACH did not observe any storm created opening. HOWEVER, ACH did observe mold in various places around the room
- ACH observed the decking near the ridge appeared damp and discolored.
- ACH observed that it appeared as though wind driven rain entered to ridge vents for a period of approximately 8 hours.

*Id.* Contemporaneous with his inspection, Long also completed a "Roofing Scope Sheet" and noted "no damage to roof surface" and "weak decking in 2+ areas near ridge vents." (Rec. Doc. 42-5). On the scope sheet, he made a note "R&R F1 & F6 Left and Right Slopes subject to review of prior losses & pre mitigation photos." *Id.* Plaintiff claims that "R&R" indicates that Mr. Long recommended removing and replacing the entire roof. (Rec. Doc. 43, at 2) (citing Long Deposition, Rec. Doc. 43-6, at 2).

In his deposition, Long testified that the inspection note regarding the roof ridge was incorrect, and that it should instead read that the contractor and the insured suggested that water came through the ridge for eight hours. (Long Deposition, Rec. Doc. 34-6, at 4). He also testified that the initial notes are reminders of things that may or may not need to be addressed, but that his official report is the estimate itself. (Long Deposition, Rec. Doc. 43-6, at 2). Mr. Resmondo was also deposed, and he stated that the moisture readings he took when he arrived at the house were six to seven feet above the floor and were still detecting moisture. (Resmondo Deposition, Rec. Doc. 43-7, at 2). He also stated "you only do a 4-foot flood cut if you have standing water inside of a home, so you wouldn't get that moisture level any higher. . . you'd see more of the full house guts because of the rain coming in." *Id.*

After the inspection, Long asked Plaintiff to provide pre-demolition photographs of the interior, and 7 Brothers subsequently sent nine photos to State Farm on October 4, 2021. (Rec. Doc. 34-8). The photos show the property after drywall and flooring had been removed. *Id.* On October 13, 2021, Long noted that review of the photos appeared to show "water lines near the floor versus ceiling damage as might be expected if water came from the roof." (State Farm Log, Rec. Doc. 34-4, at 7). He also noted that the photos seemed to indicate mitigation took place from the floor up, suggesting the floors may have been the most severely impacted, and the little drywall that can be seen in the photos do not appear to show obvious water damage. *Id.* He reexamined his photos from the inspection and observed that the foundation of the home was lower than the street level, there were clear signs that the ground in front of the dwelling had been water saturated, and interior walls had been flood cut from the bottom, suggesting the greater source of water came from below rather than from above. *Id.* Long then consulted with colleagues or management who agreed that surface water was the most likely cause of the damage. *Id.* at 6. He then prepared a denial letter for the claim, noting that there are legitimate wind damages on the exterior, but those damages were not likely to overcome Plaintiff's $15,720.00 deductible. *Id.*

After issuing the denial letter for losses caused by surface water and advising that the covered loss was below the deductible, Plaintiff disputed the findings, and 7 Brothers submitted videos of their inspection of the property to State Farm. (Rec. Doc. 34-1, at 8). Long reviewed the videos, which he noted showed the contractor

taking moisture readings at various levels on the walls, as well as clearly visible water lines and mold on the lower 3 to 4 feet of the walls. (State Farm Log, Rec. Doc. 34-4, at 5). Long concluded that the video seems to be more supportive of the conclusion of surface water intrusion and does not support a finding of water intrusion from the roof vent in any way. *Id.*

State Farm assigned the claim to another adjuster, William Humble, for additional handling, and Plaintiff's attorney requested reinspection of the property. (Rec. Doc. 34-1, at 8). During the reinspection, Humble observed and photographed marks on the wooden studs inside the house as well as marks on the wooden fence and gate outside the house, consistent with water lines. (Humble Declaration, Rec. Doc. 34-11, at 2). In his letter to Plaintiff's counsel, Humble also noted that one bedroom had no visible water damage, but the floor and baseboards had been removed, further supporting surface water as the cause of the damage. *Id.* at 59.

State Farm's engineer Kevin Vanderbook also investigated whether a significant amount of water could have entered the home through the ridge vents in the roof. (Rec. Doc. 34-1, at 9). He found that the theory that water blew in through the vents was not supported by photos, and if water had entered through the roof, he would expect to see collapsed ceilings in many areas of the home. (Vanderbrook Report, Rec. Doc. 34-12, at 4). He concluded that the ridge vents were properly installed, and would not have contributed to significant water intrusion. *Id.* He also found that Plaintiff's home was the lowest home on the street, which would account for her home being the only property to sustain flooding. *Id.* at 5. In his deposition,

Vanderbrook admitted that at least three houses near Plaintiff's were all lower elevation than hers. (Vanderbrook deposition, Rec. Doc. 43-18, at 5). He also stated that it was a remote possibility that Plaintiff's property flooded, but those lower houses did not. (Vanderbrook deposition, Rec. Doc. 43-20, at 1).

Plaintiff also filed a claim with FEMA under her flood insurance policy. The claim was denied, because the cause of loss was determined to be something other than flooding. (Rec. Doc. 43-23, at 1). Specifically, the inspector observed the roof decking to be water stained throughout, and the inspector spoke to several surrounding neighbors who could not establish a general condition of flooding. *Id*. Because the damages were found to be not flood related and because there was not a general condition of flooding, the adjustor recommended denial. *Id*. at 2.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or

unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075

## DISCUSSION

State Farm argues that it cannot be found to have arbitrarily declined to pay for Plaintiff's loss, because there were substantial, reasonable, and legitimate questions as to whether her damage was caused by a covered loss. Louisiana's insurance "bad faith" laws, codified in Louisiana Revised Statutes § 22:1892 and 22:1973, both authorize recovery of bad faith penalties from insurers who fail to pay legitimate claims in a manner that is arbitrary, capricious, or without probable cause. *Spears v. State Farm Ins. Co.*, No. 08-3183, 2009 WL 1674186, at *2 (E.D. La. June 12, 2009). "A party seeking relief under either statute has the burden of establishing three things: (1) the insurer received a satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period (thirty or sixty days); and (3) the insurer's failure to pay the claim was arbitrary and capricious." *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 954 F. Supp. 2d 440, 444 (E.D. La. 2013) (citing *Dickerson v. Lexington Insurance Co.*, 556 F.3d 290, 297 (5th Cir. 2009)).

A refusal to pay that is arbitrary, capricious, or without probable cause means that the refusal was vexatious, unjustified, or without reasonable or probable cause or excuse. *Dickerson*, 556 F.3d at 300; *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003). Thus, bad faith should not be inferred when "there is a reasonable and legitimate question as to the extent and causation of a claim." *Reed*, 857 So. 2d at 1021. The statutory penalties should only be imposed when the facts "negate probable cause for nonpayment," and penalties are not imposed "when the

insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Id.* (quoting *Guillory v. Travelers Ins. Co.*, 294 So. 2d 215, 217 (La.1974) and *Reed*, 857 So. 2d at 1021).

In this case, Plaintiff bears the burden of proving her claim for bad faith damages, including proving that State Farm's denial of her insurance claim was arbitrary and capricious. Accordingly, on summary judgment, State Farm may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to the arbitrary and capricious element. State Farm argues that, because of the legitimate questions as to whether the alleged damage to Plaintiff's home was caused by a covered cause of loss (i.e. wind-driven rain, as Plaintiff claimed) or an excluded cause of loss (such as surface water and mold, as State Farm claimed), State Farm's failure to pay is not arbitrary, capricious, or without probable cause. If State Farm is able to prove there were legitimate questions as to whether the cause of loss was covered or not, the burden shifts to Plaintiff who must set out specific facts showing a genuine issue concerning whether those questions exist.

In this case, considering the evidence in the record, legitimate doubt existed as to whether Plaintiff's losses occurred as a result of flooding and mold or wind and rain. First, neither Plaintiff nor her contractors were able to produce photos or videos of the house after the storm damage occurred and before the mitigation work began. The few photos and video that Plaintiff did supply also do not reveal to the Court the cause of the damage. The photos show rooms that have been gutted, and the video shows Plaintiff's contractor holding a device up to the walls above his head to measure

moisture. The video also shows clear evidence of mold on the walls closer to the floor. Second, although some of the initial inspection notes point toward the covered cause—stating that there may be damage to Plaintiff's roof—the notes also indicated that damage is subject to review of prior losses and photos of the property pre-mitigation. Upon further examination of his inspection evidence, Long also determined it was more likely that the damage he saw was the result of surface water, rather than water entering through the roof. Additionally, the second inspector determined, with photos, that the property and surrounding fence retained water lines, and even rooms without visible water damage had the floor removed, indicating the cause of the damage was flood water. Third, although Plaintiff refuted State Farm's engineer's determination that Plaintiff's house was the lowest home on the street, Plaintiff did not refute his findings that the house did not have any collapsed interior ceilings nor any wind damage to the roof. Finally, although Plaintiff points to FEMA's decision to deny her flood claim, the FEMA report indicates that its conclusion was also supported by the fact that there was no general condition of flooding in the neighborhood. Taken together, this evidence demonstrates that State Farm had a reasonable basis to question whether the cause of the damage was covered under Plaintiff's policy, which did not cover flood or mold losses. Therefore, State Farm did not act arbitrarily or capriciously in denying her insurance claim, and summary judgment is appropriate on Plaintiff's claims for bad faith damages under La. Rev. Stat. § 22:1982 and § 22:197.

**CONCLUSION**

**IT IS HEREBY ORDERED** that State Farm's motion **(Rec. Doc. 34)** is **GRANTED** and Plaintiff's claims under La. Rev. Stat. § 22:1982 and § 22:197 are **DISMISSED.**

New Orleans, Louisiana, this 19th day of May, 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE